Anderson, J.
From the facts agreed in this case, it appears that "William Ramsey was commissioned and ■qualified as sheriff of Augusta county, for the years 1848 and 1849 ; and that he farmed the sheriffalty of the whole county, for his term of two years, to Moses H. McCue as his deputy; and that at the request of McCue he consented to the qualification of Tlios. S. Coalter and sundry other persons that they might act as his assistants. On the 27th day of March 1848, the defendant in error, McCue, with seven others, as his sureties, executed a bond to Ramsey in the sum of $30,000, with condition that said McCue should well and truly perform the office of deputy sheriff' in such, manner as to keep harmless and indemnify the said William Ramsey from all trouble and damage which may arise in consequence of the said McCue being admitted to the said office, &c. And on tlie — day of March 1849, the said McCue, with three others, as his sureties, his co-defendants, executed another bond to said "William Ramsey, which is in all respects a transcript of the foregoing, except as to date, and the recital of the date of Wm. Ramsey’s commission in the condition of the bond ; the former reciting his commision as dated on “the 3d of January 1848,” and this, on “ the 3d day of January 1849.”
Atthe December term of the County court of Augusta, 1856, a recovery was had against said Ramsey, at the suit of one Shelton, administrator of Thomas "W. Baskins, for a fine of $150, with interest from the 28d of December 1856, and costs, for the failure of Thomas S. Coalter, a deputy sheriff of said Ramsey, employed by said McCue, to return an execution according to law. The execution was upon a delivery bond for $202.66, to be discharged by the sum of $101.33, with interest and costs, which issued against H. M. Harris and others, for the benefit of said Baskins, on the 10th of September 1849, and which the records of the clerk’s office show, *351 came into the hands of said Coalter, and had not been returned according to law.
Ramsey paid the fine, and learning afterwards that Coalter had placed the execution in the hands of McCue, and that he was the party in default, he instituted this proceeding against him and his sureties, upon their bond of 1849, to recover the money he had paid on Raskins’ execution ; and proved that McCue had taken the execution from Coalter, collected the money upon it himself, and failed to pay it over, or to return the execution. It is further stated, that to sustain the issue on the plea of non est factum, the defendants “proved that that part of the bond sued upon, which recites the date of the commission of said Ramsey as sheriff, as is disclosed by an inspection of said bond, originally read thus : by virtue of a commission dated the 3d day of January 1848,” and that the same had been altered, so sis now to read “ the 3d day of January 1849, instead of 1848, and that so altered, said bond was produced on the trial of the cause, from the custody of the plaintiff'.” Upon the case thus agreed, the Circuit court held, that the law was for the defendants, and so gave judgment.
The learned counsel for the defendants, in support of that judgment, argued, first, that the facts agreed are, in effect, that the alteration was made subsequent to the execution of the bond ; and, secondly, if this is not so, the bond, being in the custody of the party who produces it, and claims under it, and the alteration being of a material part, it devolves on him to explain how it was made; and in default of such explanation the law presumes it was made by him without the conseht of the obligors, subsequent to the execution of the bond: and that in either case, the instrument sued on was not the deed of the defendants.
With regard to the first point, it is_a question as to what are the facts agreed. In the clause above cited, the fact of the alteration_of the bond is clearly affirmed. *352 But when that alteration was made, whether before, or after, or at the time of the execution of the bond, I do not think is asserted. It seems to me that it may wdth more reason be claimed, that the previous language, in the statement of facts agreed, import that the alteration was made before the execution of the bond ; or that the bond was executed in its present form. The language is, “that said McGue, while in office, executed a bond with "Washington Swoope,” &c., “ which bond is dated March 1849, and is in the words and figures followdng, to witthen recites the bond, with the condition precisely as it now reads. “ This bond, dated March 1849,” and reciting the date of Ramsey’s commission, as of “ the 3d day of January 1849,” it is affirmed was executed by McGue and his sureties. But the whole statement of facts agreed must be taken together, and if this construction is in conflict with the language first cited, it might be regarded as a reason for rejecting it. But I can perceive no incompatibility in the two clauses, as I have construed them. But take them both together, the language would seem to import, that the bond as originally drawn recited the date of Ramsey’s commission as of the 3d day of January 1848 ; but it was altered so as to read, “the 3d day of January 1849 and after being so altered, it was executed by McOue and his sureties; that is, 'they executed a bond of which this, in its present form and shape, is an exact copy. Tnis, it seems to me, is the fair construction of the language ; at least it may be said with more reason, that such is in effect the facts agreed upon on this subject, than the construction contended for by the learned counsel for the defendants. If the view I have taken of the agreement of facts is correct, it is decisive of the case, on a special verdict or facts agreed, unless the judgment can be sustained upon the other issue.
But if I am mistaken in this view, and the facts agreed do not affirm that the bond was executed in its *353 present shape, but assert that it was altered in the particular meutioued, without affirming when the alteration was made, whether at the time of its execution or before or since ; how does it appear that the alteration was made subsequent to the execution ? It is argued that it is a material alteration, and unexplained, and the bond being in the custody of the party who produced it and claims under it, the presumption of law is, that it was made subsequent to its execution, and without the consent of the obligors.
Whether or not it is a material alteration, I deem it unnecessary in this caseto inquire. Admitting the facts as stated, to have been agreed, I cannot admit the conclusion of law as drawn from them. If such conclusion be fairly deducible from the facts stated, it is not a conclusion of law, but a conclusion of fact; and cannot be drawn by the court in a special verdict, or case agreed. And not being found, the court in pronouncing the conclusion of law upon the facts, cannot deem it to exist.
But I would not be understood as indicating an opinion that such a conclusion of fact is warranted from the facts agreed. Upon this question there has been some contrariety of opinion. The rule of the common law seems to have been, that an alteration or interlineation in a deed, in the absence of any opposing testimony, would be presumed to have been made before the deed was finally executed; because the law will never presume fraud or forgery in any person. Co. Litt. 225 b. n. (1). Omnia presumuntur rite esse acta. The rule is laid down by Greenleaf thus: “ Generally speaking, (he says,) if nothing appears to the contrary, the alteration will be presumed to be cotemporaneous with the execution of the instrument. But if any ground is appai’ent on the face of the instrument, the law presumes uothiug, but leaves the question of the time when it was done, as well as that of the person by whom and the intent with which the alteration was made, as matters of fact, to be *354 ultimately found by the jury, upon proof to be adduced by tbe party offering the instrument in evidence. 1 Greenleaf Ev., sec. 564, See also, 2 Pars. on Contracts, note a, p. 228. According, then, to the rule as laid down by this eminent jurist, even when there is any suspicion of unfairness upon the face of the instrument, the time when the alteration was made, by whom, and with what intent, is a question of fact to be decided by a jury, and consequently cannot be inferred by the court upon a statement of facts agreed. Also in note 1 to the text which I have quoted, it is said that, “it is generally agreed, that inasmuch as fraud is never to be presumed, therefore, if no particular circumstances of suspicion attach to an altered instrument, the alteration is to be presumed innocent, or made prior to its execution. And numerous authorities are cited in support of the doctrine as stated. But it is unnecessary that this point should now be decided. I deem it proper to state, however, that there are no circumstances attaching suspicion to this instrument, or impugning its genuineness.
There is one other ground upon which it is contended that the judgment is right. It is that the recovery against Eamsey is for the default of Coalter ; and that it is not competent for him now to recover against McCue for such default. It is very clear that if Eamsey had been aware of the fact that McCue was the real defaulter, and had proved it in that case, he could not have defeated the plaintiff’s recovery by such proof. And in a suit by Eamsey against McCue, can the latter defend himself by pleading that the recovery was against Eamsey for the default of Coalter in not returning the execution? To such defence it would be a sufficient reply, that McCue took the execution from Coalter, collected the money on it himself, and kept both the money and the execution ; and that Eamsey had to pay the money to the creditor, which McCue, *355 and not Coalter, had collected and used. I do not think there is anything in this objection. But, if there was, it could not avail the defendants in error, under the ’ pleadings in the cause. The fifth assignment of breach in the declaration alleges the facts as proved. And the defendants having taken issue upon the allegations, they could not object to the proof. I am of opinion, therefore, that the judgment of the Circuit court is erroneous, and ought to be reversed.
The other judges concurred in the opinion of Anderson, J.
The judgment was as follows:
The- court is of opinion, for reasons stated in writing, and filed with the record, that the said judgment is erroneous : Therefore, it is considered that the same be reversed and annulled, and that the plaintiffs recover against the defendants their costs by them expended in the prosecution of their writ of supersedeas aforesaid here; and this court, proceeding to render such judgment as the said Circuit court ought to have rendered, it is further considered that the plaintiffs recover against the defendants thirty thousand dollars, the debt in the declaration mentioned, and their costs by them about their suit in the said Circuit court expended. But this judgment is to be discharged by the payment of one hundred and fifty-five dollars and eighty-three cents, that being the amount of damages sustained by reason of the breaches assigned in the declai’ation, of the condition of the writing obligatory therein mentioned, as appears by the case agreed, with interest thereon, to be computed after the rate of six per centum per annum from the 23d day of December 1856, till payment, and the costs last aforesaid; which is ordex’ed to be certified to the said Circuit court of Augusta county.
Judgment reversed.